UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-20279-CR-SCOLA

UNITED STATES OF AMERICA,

      Plaintiff,
v.

STANISLAV PAVLENKO,
ISAAC FELDMAN, et al.,

      Defendants.
_____/

### OMNIBUS ORDER ON MOTIONS TO SEVER AND MOTION TO STRIKE

THIS MATTER is before the Court on the following motions: Stanislav Pavlenko's Motion to Sever Defendant [ECF No. 531]; Isaac Feldman's Motion to Sever Defendant [ECF No. 534]; and Isaac Feldman's Motion to Strike [ECF No. 535]. The Court has carefully considered the Defendants' motions and the Government's responses, and is otherwise fully advised. For the reasons stated below, these motions will be denied.

    **I.**    **Motions to Sever**

Defendant Pavlenko argues that he is entitled to severance because he has no relation to the other Defendants currently available for trial and would suffer prejudice as result of evidence introduced against, and only relevant to, his co-Defendants at a joint trial. Defendant Feldman similarly argues that he has been improperly joined and will suffer spill-over prejudice at trial from evidence pertaining only to his co-Defendants.

This Court disagrees. Both Defendants Pavlenko and Feldman have been properly joined pursuant to Federal Rule of Criminal Procedure 8. In *United States v. Hill*, 643 F.3d 807, 828 (11th Cir. 2011), the Eleventh Circuit held that a non-lead defendant was properly joined, even though two out of the three conspiracies charged did not implicate him and differed as to time, participants, and factual particulars. The Court of Appeals explained that the three conspiracies were properly joined because they all related to the lead defendant's "master scheme to defraud lenders through a common plan and design," and "[t]he fact that [the lead defendant] used a

different set of actors to perform the three acts of his play did not transform it into three different plays." *See id.* at 829.

Similarly here, the substantive acts and conspiracies charged in the Indictment stem from Defendants Simchuk and Takhalov's master scheme to defraud certain patrons of their nightclub establishments on Miami Beach. Defendants Pavlenko and Feldman are properly joined as members of the wire fraud conspiracy (Count One) and as having committed the substantive act of wire fraud and conspiracy to defraud Homeland Security (Count Forty). These charges as to both Defendants relate to, and originate from, the same overall master scheme to defraud.

As to the issue of potential prejudice, the Court is not persuaded by Defendants' arguments. Severance is appropriate only where a joint trial would be ***unduly*** prejudicial. *See* Fed. R. Crim. P. 14. But there are countervailing concerns too. Indeed, there is a preference for joint trials so as to promote efficiency and ensure consistency in verdicts among defendants who engaged in related acts stemming from the same overall master scheme. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Thus, in deciding whether to sever, the Court must balance potential prejudice against the public interest in joint trials and judicial economy. *See Hill*, 643 F.3d at 828. The burden is upon the defendant to show specific and compelling prejudice to his defense, in order to tip the scales in favor of severance. *See United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997). In any case, "severance is not automatically required even if prejudice is shown." *Puiatti v. McNeil*, 626 F.3d 1283, 1310 (11th Cir. 2010); *see also Zafiro*, 506 U.S. at 539–40. "A court's limiting instruction to the jury will often cure any prejudice resulting from a joint trial," and "a district court should grant severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Puiatti*, 626 F.3d at 1310.

As the Eleventh Circuit has explained, the key consideration is whether the jury would be able to sift through the evidence and make an individualized determination as to each defendant. As such, the Court must consider:

> whether under all circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*United States v. Varella*, 692 F.2d 1352, 1360 (11th Cir. 1982).

Applying this test, the Court finds that neither Defendant Pavlenko nor Defendant Feldman has established specific and compelling prejudice justifying severance instead of a joint trial. Defendant Pavlenko merely argues that the allegations in the Indictment are false as to him and attempts to minimize his alleged involvement with the conspiracy and substantive offenses charged. But such arguments are for a jury to evaluate in determining guilt or innocence; they do not establish that a joint trial would be prejudicial to a defendant, nor that any jury would be incapable of sorting through the evidence applicable to him vis-à-vis the other co-defendants. *See Hill*, 643 F.3d at 829 ("[E]ven if, as [defendant] asserts, there had been an 'enormous disparity' in the amount of evidence that related to other defendants or charges compared with the evidence that related to him, '[a] defendant does not suffer compelling prejudice, sufficient to mandate a severance, simply because much of the evidence at trial is applicable only to co-defendants.'").

Similarly without merit are Defendant Pavlenko's arguments that severance is required because he was not involved with any co-Defendants currently available for trial, and that he will suffer spill-over prejudice from evidence introduced as to other Defendants. He is charged together with several co-Defendants who are available for trial in three of the conspiracy counts. The extent of his actual involvement, if any, with these conspiracies is, again, a factual matter for the jury, not a basis for severance. *See Hill*, 643 F.3d at 829. Finally, the Court disagrees that the risk of spill-over is too great. In the first place, Defendant Pavlenko is charged as a co-conspirator in two counts; thus, in the Government's case, much of the evidence will be as relevant to him as it is to any of the other Defendants so charged. Further, to the extent that any evidence is not pertinent to this particular Defendant, an appropriate limiting instruction to the jury can ameliorate any potential prejudice. *See Puiatti*, 626 F.3d at 1310.

As for Defendant Feldman, his arguments are also insufficient to make a showing of compelling prejudice. That he may have been a minor participant in the crimes charged is, to repeat, a factual issue for the jury to consider and resolve; it is not a basis for severance. *See Hill*, 643 F.3d at 829. Further, in light of the conspiracy and substantive charges with which Defendant Feldman is charged, the evidence introduced against his co-Defendants may also pertain to him in large measure. In any event, as with Defendant Pavlenko, any potential prejudice to Defendant Feldman may be dealt with by way of limiting instruction. *See Puiatti*, 626 F.3d at 1310.

In sum, the Court finds that Defendants Pavlenko and Feldman have not demonstrated that severance would be appropriate here. Instead, the Court finds that the public's interest in judicial economy and consistent verdicts compels a joint trial in this case.

## II. Motion to Strike

Defendant Feldman contends that certain language from the Indictment should be stricken under Federal Rule of Criminal Procedure 7(d) as "prejudicial surplusage." *See* Mot. Strike at 1. He argues that the Government should not be permitted to include in its Indictment language indicating that the conduct in question by the so-called "B-girls" was done "in violation of Florida Statute 562.131, which prohibits employees of a bar from soliciting customers to purchase drinks for them." *See* Indmt. ¶ 26. According to Defendant Feldman, this language is unnecessary and will prejudice him because "the jury will hear that a Florida criminal statute had been violated, even though nobody involved in this case was ever arrested for or charged with violating that statute." *See* Mot. Strike at 4. He further contends that the language will "confuse the issues and blur the elements necessary for conviction, as well as necessitate a trial-within-a-trial, as defense counsel will be forced to defend against the allegation that the un-charged Florida State statute was violated." *Id.*

These concerns are unfounded. The Court does not agree that the language in question is without relevance to the crimes charged. Nor does it find that the jury will be confused or the issues blurred because of the language in question. In order for language to be stricken from an indictment, the defendant faces a heavy burden, one that the Eleventh Circuit has described as "most exacting." *See United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (citation omitted). Indeed, "Rule 7(d) is strictly construed against striking surplusage," *see United States v. Northcutt*, 2008 WL 162753, at *6 (S.D. Fla. Jan. 16, 2008), and it should not be done "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial," *see Awan*, 966 F.2d at 1426. Moreover, even where prejudice is shown, language in the indictment may not be stricken so long as it bears some relevance to the offense charged. *See United States v. Williams*, 2008 WL 4867748, at *3 (S.D. Fla. Nov. 10, 2008); *see also United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("[I]f the evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.") (citation omitted).

Here, the references to the Florida statute in the Indictment are clearly relevant to the offenses charged against Defendant Feldman and his co-conspirators – *i.e.*, participating in a

scheme whereby "B-girls" were used to entice victims to order alcohol for them and to fraudulently obtain money from victim credit card holders through nightclub operations. References to the Florida statute are unquestionably relevant to the charges in Counts Thirty-Eight and Thirty-Nine because the money laundering conspiracy charges are predicated on the wire and visa fraud charges, to which the Defendants' conduct in violation of this law relate. As to the conspiracy to defraud Homeland Security charges, Defendant Feldman is charged with conspiring to cause the "B-girls" to falsely proclaim that their purpose of entry into the United States was to study, rather than to engage in criminal activity – criminal activity like that proscribed by the Florida statute and other laws. The language in question also provides background on the conspiracy charged and may assist the jury in understanding the genesis of the case. Further, it appears that the language may be relevant to support certain of the Government's arguments regarding Defendant Feldman's *mens rea* and motives as to the offenses charged, and also to meet the likely claim from the Defendants that they were mere lawful party promoters.

The Court also finds that the Florida statute and the conduct it proscribes are interconnected with the federal charges such that, as the Government states, "evidence of the B-girls' conduct will incidentally prove a violation of the Florida Statute, an entirely proper by-product of the evidence that will be adduced at trial." *See* Gov't Resp. at 9. Because each fraud charge stems from the "B-girls" soliciting alcohol from the patron victims, evidence proving any of the counts charged will likely also prove a violation of the Florida statute. Thus, evidence relating to this conduct would be admissible at trial. *See United States v. Herre*, 930 F.2d 836, 837-38 (11th Cir. 1991) (where "proffered evidence was essentially a part of the chain of events explaining the context, motive, and set-up of the crime," and "[t]he evidence presented the jury with necessary background information . . . and provided the jury with some basis to understand the reasons behind the charged offense," that "evidence was essentially part of the charged offense, and the district court did not abuse its discretion in admitting [it]") (citations omitted).

Finally, although it need not reach the question, the Court finds that the references in the Indictment to the Florida statute are not unduly prejudicial to Defendant Feldman. As the Government accurately states, "[r]eferences to the Florida Statute are minimal at best and are written in a bland, non-inflammatory manner." *See* Gov't Resp. at 10. Further, the language in question relates to, and concerns, conduct that will inevitably be subject to proof at trial.

In sum, the Court concludes that Defendant Feldman has failed to meet the heavy burden of showing that the Indictment's references to the Florida statute are completely irrelevant to the crimes charged and that they would be unduly prejudicial to him.  Instead, the Court finds that the references are undoubtedly relevant to the overarching scheme at issue in this case, as well as to the particular offenses charged.  Therefore, the language of the Indictment is not subject to being stricken here.

## CONCLUSION

For the reasons explained above, the Court will deny the motions to sever and the motion to strike.  Accordingly, it is hereby **ORDERED and AJUDGED** that: Stanislav Pavlenko's Motion to Sever Defendant [ECF No. 531] is **DENIED**; Isaac Feldman's Motion to Sever Defendant [ECF No. 534] is **DENIED**; and Isaac Feldman's Motion to Strike [ECF No. 535] is **DENIED**.

**DONE and ORDERED** in Chambers at Miami, Florida on January 25, 2012.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

*Copies to:*
Counsel of Record